CLARK *et al. v.* MILLER, STATE REVENUE AGENT.*

(In Banc. March 16, 1925. Suggestion of Error Overruled May 4, 1925.)

[105 So. 502. No. 24507.]

1. LEVEES AND FLOOD CONTROL. *Allegations as to awarding second contract held to negative intention to waive breach of first contract.*

The allegation in a bill to recover damages for the breach of a contract made with a board of levee commissioners, the substance of which is that the contractors notified the commissioners that they were unable to proceed further and wholly abandoned the contract, whereupon they became liable to the commissioners for the damage thereby sustained, and that the commissioners then advertised for bids for a new contract, the lowest bid received therefor being one by the original contractors with whom a new contract was then entered into for the work contemplated by the original contract at an increased cost, negatives any intention on the part of the commissioners to waive any breach of the first contract by the making of the second.

2. PLEADING. *Recital in .exhibit controls allegation in bill in conflict with it only where exhibit is made basis of relief sought.*

The rule of pleading under section 579, Code of 1906; Hemingway's Code, section 339, that, where there is a conflict between an allegation in the bill and a recital in an exhibit the latter controls

(123)

on demurrer, can be invoked only where the exhibit is made the basis of the relief sought.

3. STATES. *Constitutional provision prohibiting granting additional compensation after contract made binds legislature and subordinate state agencies.*

The provision of section 96 of the Constitution of 1890 prohibiting the legislature from granting extra compensation to a public contractor after contract made binds not only the legislature but all subordinate state agencies created or controlled by it.

4. LEVEES AND FLOOD CONTROL. *Yazoo Mississippi levee board can exercise only such powers as legislature delegates to it.*

The Yazoo Mississippi levee board, except as may be otherwise provided by the constitution, is subject to the supervision and control of the legislature and can exercise, unless the constitution otherwise provides, only such powers as may be delegated to it by the legislature.

5. LEVEES AND FLOOD CONTROL. *Compensation paid by levee board in excess of that provided by contract can be recovered by levee board or state revenue agent.*

Compensation paid by the Yazoo Mississippi levee board to a contractor for building a levee in excess of that provided by the contract is prohibited by section 96 of the constitution, and may be recovered from the contractor by the levee board or the state revenue agent.

6. EQUITY. *Bill of complaint is multifarious if it seeks recovery on separate causes of action flowing from distinct sources, as to which some defendants are liable on one and not on other causes.*

A bill of complaint is multifarious when recovery is sought thereby on two or more causes of action which flow from separate and distinct sources, and some of the defendants to the bill who are liable on one, have no connection with and are not liable on the other, cause of action.

---

*Headnotes 1. Levees and Flood Control, 36 C. J., Section 16; 2. Pleading, 31 Cyc., p. 564; 3. States, 36 Cyc., p. 880; 4. Levees and Flood Control, 36 C. J., Section 44; 5. Levees and Flood Control, 36 C. J., Section 17 (Anno); 6. Equity, 21 C. J., Sections 309, 431.

APPEAL from chancery court of Leflore county.
HON. C. L. LOMAX, Chancellor.

Suit by W. J. Miller, state revenue agent, against R. T. Clark and others. From decree overruling demurrers to bill, defendants appeal. Reversed and remanded.

*Engle & Laub,* for appellants R. T. Clark and R. P. Harris.

*Authority of levee board*: The authority of the levee board has been ably discussed in the case of *Ham* v. *Levee Commissioners,* 83 Miss. 534. In that case the supreme court of Mississippi said: ''In view of the generality and broadness of the terms employed in granting powers to the board, it is plain that it was the intention to vest the boards of levee commissioners with plenary authority to deal with the 'erection, maintenance and repair' of the levee system at their discretion for the purpose of protecting the property of their respective districts from loss and destruction. The act incorporating the board of levee commissioners of the Yazoo-Mississippi Delta specially directs that it shall be construed as 'an exercise by the legislature of all the powers appertaining to it necessary to carry into effect the intent of said act;' and as stated, this legislative enactment is practically embodied in our organic law.

''The terms employed in the Constitution, by every reasonable interpretation, convey the evident desire of clothing levee boards with the power to 'erect,' 'construct' and 'locate' levees . . . manifestly referring to levees to be built in the future as contingencies might arise or the judgment of the levee commissioners dictate.'' *Ham case,* 83 Miss. 552-553. This case held the levee board has plenary authority and discretion in carrying out the purpose of its creation and this purpose was to protect the lands in the district from overflow. In doing what the levee board did in the instant case, the board was exercising duties of a judicial and discretionary nature and the courts in the absence of fraud or a palpable abuse of the discretion by the levee board have no

power to control its actions. *Ham* v. *Levee Commissioners,* 83 Miss. 534; 19 R. C. L. page 1067, "Municipal Corporations," sec. 355.

The courts will not by injunction control the discretion of officers or boards where this would amount merely to the substitution of the judgment or discretion of the court for that of the officer whose duty it is to perform an act, the propriety of which is questioned. 3 Elliott on Contracts, sec. 2570, page 710; 8 Elliott on Contracts, sec. 2570, page 424.

When the question came before the board of either increasing the price or having the work abandoned, the board was confronted with the proposition of permitting the lands subject to its care to be in danger of overflow or to pay more money and have the work rushed to completion.

The date set forth in the bill of complaint and in the contract shows that the contract was let in 1916 at a time when the United States was not engaged in war and that these increases were made at a time when our country was engaged in war. The levee board had full knowledge of all conditions and the proposition the board had to deal with was one peculiarly within its power. It made a new contract and we submit that this new contract was supported by a sufficient consideration and is valid and binding. The board first made a new contract with some of the parties involved in the original contract and later the board made a new contract with one of these parties, and later reduced the price on this last contract. The board conducted the affair so as to bring about the completion of the contract and the protection of the lands committed to its care.

The making of these new contracts discharged the old contract. 3 Elliott on Contracts, sections 1864, 1865, 1866 and 1867; 8 Elliott on Contracts, sections 1864, 1865 1866 and 1867. The levee board had the right to elect to proceed under the terms of the contract and put the contractors in default and sue them on their bond, or

the levee board had the right to make a new arrangement. It made the new arrangement and is bound thereby. 13 C. J., Contracts, section 212 (c) section 213.

After a contract has been broken, there is nothing to prevent the parties from entering into a new contract involving part or all of the same subject-matter. 13 C. J., page 590, citing *Rothenberg* v. *Packard,* 97 Miss. 428, 52 So. 458; *Linz* v. *Schuck,* 124 A. S. R. 481.

In this case the levee board is estopped by its dealings with the contractor to contend that it can now recover the money which it voluntarily paid. The contractor had to pay additional amounts to get the work done as it is a matter of general knowledge that prices of everything which went into the fulfilling of this contract had appreciably advanced. 1 Elliott on Contracts, sec. 615; *City of Natchez* v. *Mallery,* 54 Miss. 499; *City of New Orleans* v. *Crescent City R. Co.,* 6 So. 719.

In the instant case, the levee board was acting in line with the purpose of its creation and was doing authorized acts and had the power to do what it did do and in matters of this kind there is no distinction between estoppel of public bodies and individuals and private corporations. 21 C. J., "Estoppel," sec. 190 (8), Public Government and Public Officials (A); *Iowa* v. *Carr,* 191 Fed. 257, 266, 112 C. C. A. 477; *Com.* v. *Smith,* 4 Pa. L. J. 121, 124, 125; *U. S.* v. *Stinson,* 125 Fed. 907, 910, 60 C. C. A. 615 (aff. 197 U. S. 200), 25 S. C. T. 426, 49 L. Ed. 724; *Utah Power, etc., Co.* v. *U. S.,* 230 Fed. 328, 144 C. C. A. 470; *U. S.* v. *Williamette Valley, etc., Wagon-Road Co.,* 54 Fed. 807. This is not a case of want of power in the levee board to deal with the situation, but at most is a case of irregular exercise of power, and the levee board is now estopped to go back on its act. 21 C. J., "Estoppel," secs. 218 and 219 and notes cited numbers 37, 38 and 46; *Hutchinson & Southern Ry. Co.* v. *Fox,* 15 L. R. A. 401, 30 A. S. R. 273.

The levee board in making these payments was not acting in a ministerial capacity, but was exercising a judicial and discretionary authority.

The federal government, at the time this levee board was having this work done, granted an increase in price to contractors doing levee work. The federal government realized that owing to changed conditions and increased prices brought about by the war, that the levees could not be completed by the contractors at the prices originally agreed upon, and increased prices were from time to time agreed upon and paid. This levee board did nothing more than was at the time being done by the federal government. This levee board, under the conditions existing at the time, was fully justified in making any arrangement which it could make within the bounds of reason in order to get the levees completed and in order to get this additional yardage put into levees.

*W. M. Hall* and *Pollard & Hamner,* for appellant, United States Fidelity & Guaranty Company.

We have searched the books and even made inquiry of the editorial departments of leading law publishers of digests and reports, and have found no decision holding that the owner in event of his builder's default may contract with the defaulting builder to complete the work at a higher price and hold his surety for the excess in the absence of the surety's agreement then and there made that it may be done and that he will be liable under his bond for the excess.

There can be no sound holding to such an effect because it would not consist with fundamental principles of suretyship. For example, principals owe their sureties the duty to save them from liability and loss (21 R. C. L., page 1108, sec. 145); and, consequently, principals' performance inures to the benefit of and discharges their sureties (21 R. C. L., p. 1044, sec. 89; 32 Cyc. 166, 167); and obligees owe it to sureties to preserve their rights and securities (21 R. C. L., p. 1000, sec. 50; *Picard*

v. *Shantz,* 70 Miss. 381) and to allow obligees to make such arrangements with defaulting principals and hold the sureties without having secured their agreement in advance would be to deny and deprive them of all those rights.

Again, the necessary consequence of such a rule would be to give obligees the right to release principals and hold their sureties alone in the face of the well-settled law that a surety is not bound unless his principal is. *Conn.* v. *Pender,* 1 S. & M. 386; *Cage* v. *Cassidy,* 23 How. (U. S.) 109, 16 L. Ed. 430; and 21 R. C. L., p. 974, sec. 27.

The courts seem to recognize that when a contractor declines to perform for the stipulated price and demands a higher price for his performance, the other party by paying it without having the contractor's agreement to remain bound for performance and damages under the original contract, waives his right to performance and damages thereunder. See *Camfield* v. *Sauer* (C. C. A.), 189 Fed. 576, 579; *Peirce* v. *Cornell,* 102 N. Y. S. 102, 117 App. Div. 66; Donnelly, The Law of Public Contracts, at page 445, sec. 309.

In *Comey* v. *United Surety Co.,* 217 N. Y. 268, 111 N. E. 832, Ann. Cas. 1917 E, 424, the one case in the books that we have been able to find in which a surety was held bound for damages resulting from an arrangement with the defaulting contractor—principal to complete the work at a higher price—the court of appeals recognized the necessity for the surety's agreement thereof to have been obtained before it was made.

It must, therefore, be the law that the owner-obligee, in event of the contractor-principal's default, must do the work himself or have it done by some one other than the defaulting contractor, or obtain the surety's agreement to his making an arrangement with the defaulter to complete at a higher price and be bound for the excess as damages in order to be able to recover from the surety on his bond the necessary or reasonable cost of completing in excess of the contract price.

142 Miss.—9.

In view of the fact that the board's arrangement to complete was with three of the four defaulting principals and in view of the operation of the law in the way shown, the new arrangement and the completion thereunder can only be viewed in the eyes of the law as a continuance of the contract, and the increase in price, as the board's voluntary payment of more than the contract called for; that is, an over-payment. This conclusion is reinforced by appellee's contention, if true, that. the board could not legally, in view of section 96 of the constitution, increase the price of these contractors, because the so-called second contract with these same people would be no more than an increase of the price provided in the original contract to be paid them for this work. It seems to be the law that when the new agreement in place of the old is illegal and void the original contract still subsists and controls. Donnelly, The Law of Public Contracts, p. 263, sec. 167.

Whatever the technical attitude of Clark, Harris and Cheshire, trading as R. T. Clark & Co., after Dulaney withdrew, there is a rule of law well settled in Mississippi that makes them the same firm as far as both the obligee and appellant surety are concerned. That rule of law is that since the enactment of the statute (section 2170, Hemingway's Code; section 2683, Code of 1906) making obligations joint and several, the obligations and promises of partners have been joint and several. *Fairchild* v. *Grand Gulf Bank,* 6 Miss. (5 How.) 597, 605. The dropping out of one partner would not, of course, affect the right or the obligation of the others, and each of them, to perform the contract which they under the law became jointly and severally obligated to perform. The so-called new firm of Clark, Harris and Cheshire was not, therefore, in the eyes of the law "a different partnership from the original contractors." The contract under which Clark performed and completed the work was not only in the eyes of the law, but was also in fact, the original contract.

The exhibits also manifestly contradict the allegations of the bill that there was a reletting because of the alleged abandonment, and damages in the amount of four hundred thirty-three thousand, four hundred sixteen dollars and twenty-five cents determined thereby, and under the Mississippi practice, control the allegations of the bill in such circumstances. Section 355, Hemingway's Code section 598, Code of 1907) ; *House* v. *Gumble,* 78 Miss. 259; *McNeil* v. *Lee,* 79 Miss. 455; *Weir* v. *Jones,* 84 Miss. 610; *McKinney* v. *Adams,* 95 Miss. 832; *Carpenter* v. *Douglas,* 104 Miss. 74; *Orlansky* v. *Johnson,* 113 Miss. 321.

If the exhibits in question in the case at bar are no more than evidence of the reletting or making of a new contract to complete, determining the damages sought to be recovered, they certainly evidence allegations of facts essential to appellee's case and right to recover; and in view of this court's approval of the application of the rule to the recitals of the receiver's letter, exhibited with the bill in the Orlansky case, there can be no doubt about its application to these exhibits.

Reverting now to our contention that the increased price allowed to Clark, Harris and Cheshire, represented, for these reasons, payments contrary to the terms of the contract or over-payments, we have to say in conclusion that such payments do not constitute a breach of the bond and entitle appellee to recover from this appellant. It is well settled that a surety on a construction bond is not liable for such payments. 9 C. J. 861; *Picard* v. *Shantz,* 70 Miss. 381; *Gage* v. *Road Improvement Dist.,* 252 S. W. 922 (Ark.). See also *Edwards Co.* v. *Jennings* (Tex.), 33 S. W. 585.

The bill only states a case, if it states any, for recovery of the over-payments from the commissioners and their sureties as moneys improperly paid, and from Clark as moneys improperly had and received. In that case, this appellant is involved only as a surety for Commissioner Dacus.

*R. L. McLaurin,* for appellant C. H. Dulaney.

*The bill is multifarious and the demurrer should have
been sustained on that ground.* Story's Equity Plead-
ings, p. 487, sec. 530; 14 Encyclopaedia of Pleadings
and Practice, 199 and 203. If a bill is multifarious,
the proper practice is to demur. Section 358, Heming-
way's Code, and annotated cases thereunder. Our court
has specifically held that this "statute does not permit
the uniting in one bill of distinct and unconnected equi-
ties against disconnected defendants; it in no way affects
the question as to disconnected parties or subjects." See
*Georgia R. R. Co.* v. *Brooks,* 66 Miss. 583, 6 So. 467; *Co-
lumbus* v. *Humphreys,* 64 Miss. 258, 1 So. 232; *Scottish
Union & Nat'l Ins. Co.* v. *Warren Gee Lumber Co.,* 103
Miss. 816, 60 So. 1010; *Guess* v. *Strahan,* 106 Miss. 1, 63
So. 313; *Nelms* v. *Brooks,* 105 Miss. 74, 61 So. 985; *Carter*
v. *Kimbrough,* 122 Miss. 544, 84 So. 251.

The case at bar is clearly distinguishable from *Middle-
ton* v. *Howell,* 127 Miss. 880, because in the case at bar
the interest and liability of C. H. Dulaney, even if the
allegations of the bill show a liability, are separate; do
not flow from the same fountain; do not radiate from the
same center; and have no common connecting links. The
court will here bear in mind that regardless of the fact
that the *Tribette case,* 70 Miss. 182, was cited by Judge
ETHRIDGE as an authority in the Middleton case, it had
been, prior to the date of the Middleton decision, re-
ferred to in the case of the *Scottish Union & Nat'l Ins.
Co.* v. *Warren Gee Lumber Co.,* 103 Miss. 821.

The bill is multifarious in that complainant has united
therein several distinct and unconnected matters against
different and disconnected defendants, to-wit: An action
against principals and sureties on bonds for performance
of a contract with an action against the principals alone
for moneys alleged to have been improperly had and re-
ceived, and with an action against the levee board officials
and sureties on their several official bonds for alleged
malfeasance or malfeasance in office.

It would seem too plain for argument that there is not a common liability between the defendants and that this appellant, C. H. Dulaney, was made a defendant upon a record with a large portion of which, and of the case made by which, she had no connection whatsoever. Under these circumstances, as shown by numerous Mississippi decisions, and shown by the text quoted in full from Story's Equity Pleadings, she had a right to demur and to show the evil of thus uniting distinct and disconnected matters in one bill. It is not a case of mere misjoinder of different causes of action between the same parties, but is a case of misjoinder of different causes of action between different defendants. In fact, it seems to me to be a joinder of an action at law and a matter of equity. Therefore, it is not a case of the uniting in one bill of several distinct and unconnected matters of equity against the same defendants.

*Noel & Neilson* and *Shands, Elmore & Causey,* for the appellee.

I.   *The allegations of the bill sufficiently set forth a breach of the original contract of November 1, 1916, and is not changed by a true construction of any of the exhibits.* See *U. S. F. & G.* v. *Tate County,* 114 Miss. 1, 3, 74 So. 769.

II.   *The contract of November 1, 1926, having been breached, the liability of the principals and sureties at once accrued to the levee board. Having thus accrued it was not within the power of the legislature, nor the levee board, to impair its obligation or reduce or extinguish its liability.* That question is settled by section 100, state constitution, whose terms are so familiar to this court as to need here no reproduction. It has been construed clearly and completely. Whatever may have been questions arising, had this transaction occurred between ordinary corporations or private persons, the constitutional provision cited closes the inquiry as to this class

of cases. Constitution of Mississippi, sec. 100; *Ice Co.
v. Adams,* 75 Miss. 410, 415, 22 So. 944; *Electric Ry. Co.
v. Adams,* 79 Miss. 408, 30 So. 694.

III. *The partnership of R. T. Clark & Co., consist-
ing on November* 1, 1916, *of R. T. Clark, R. P. Harris,
R. L. Cheshire, C. D. Dulaney, and L. C. Dulaney, was not
the same entity as the partnership of R. T. Clark & Co.
of April* 30, 1918, *consisting of R. T. Clark, R. P. Harris
and R. L. Cheshire—without the Dulaneys.* The legal
entities of the firms obligating themselves on November
1, 1916 and on April 30, 1918, were different. *Pease &
Dwyer Co.* v. *Somers Planting Co.,* 93 So. (Miss.) 673;
20 R. C. L., par. 118, p. 954; *Webb* v. *Butler,* 68 So. 369;
*Snyder Mfg. Co.* v. *Snyder,* 43 N. E. 325.

IV. *The making of the new contract April* 30, 1918,
*with different parties and different terms was not a
waiver of the obligation incurred by breach of the origi-
nal contract.* The Yazoo-Mississippi Delta levee board
is one of the functioning units and legal subdivisions of
the public authority and power vested in the people of
Mississippi. Its rights and liabilities are altogether pub-
lic and not in the least private. Of this R. T. Clark &
Co., its sureties, and all others, connected with this suit,
had constructive, if not actual, notice. This point is
covered so fully as to make argument needless in an ex-
tract from the opinion in *Electric Ry. Co.* v. *Adams,* 79
Miss. 408, 416.

V. *The bill in this case, as it now stands and as it
stood in the lower court at the time of the hearing of the
demurrer, is not multifarious. Roberts* v. *Burwell,* 117
Miss. 451, 469, 78 So. 357. At bottom the question of
multifariousness is merely one of convenience and should
be sustained whenever the public convenience and time
of the court is conserved, unless there be extreme and
unjust hardship imposed upon one or more of the parties

concerned. Then, and then only, to that extent only, should a bill be held to be multifarious.

*Lucy R. Somerville,* also, for appellee.

The argument of the defendant surety company is that under the circumstances of the second arrangement, as it is called, the breach of the original contract was waived; and that ultimate completion of the work by defendant, Clark, satisfied the surety's obligation. As a part of its argument in support of both propositions the surety company contends that the original contract was the same contract which was finally completed.

We contend that the contract made on the second letting was a new, distinct and separate contract from the original contract for the following reasons: (a) The parties were not the same. C. H. Dulaney was a party to the first contract, but not a party to the second contract. The first partnership was not the same as the second. *Pease & Dwyer Co.* v. *Somers Planting Co.,* 93 So. 674. (b) The consideration was not the same. The consideration in the second contract was over four hundred thousand dollars more than the consideration of the first contract. The consideration is a material element in a contract. (c) Even the work to be performed was materially different. The work to be done under the second contract was only ninety-three per cent of the work to be done under the first contract. (d) The time of performance was different.

The appellant surety company relies on Donnelly's Law of Public Contracts, citing section 309. While the statement by Mr. Donnelly may, and probably does, announce a general rule, the authorities cited by him are not satisfactory. Moreover, there is no attempt by him to state the reason of the rule. The reason of such a rule, conceding for the purpose of argument that such a rule exists, is bound to be this: Such was the intention of the parties. *Rogers* v. *Rogers,* 1 N. E. 122; *Ala-*

*bama Oil & Pipe Line Co.* v. *Sun Co.,* 92 S. W. 253; *Joseph Beck & Sons* v. *Danaher,* 157 N. Y. Supp. 503.

We come, therefore, to the question as to what was the intention of the parties with reference to waiving the right of action in favor of the levee board against R. T. Clark & Co., by reason of the serious breach of the first contract. The obligation of a contract is measured by the standard of the law in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribe. 6 R. C. L. 325; *Cincinnati* v. *Utilities Commission,* 3 A. L. R. 708; *Gregg School Dist.* v. *Maud Hinshaw,* 17 A. L. R. 1224; *Farmers Bank* v. *Fed. Reserve Bank,* 262 U. S. 649.

Section 100 of the constitution of the state of Mississippi was just as much a part of the second contract entered into by the levee board for this excavation as if it had been expressly made a part of the contract by copying it into the same. Such being the case and the law being that the levee board had no right to waive its claim against R. T. Clark & Co. for this huge sum, how can it be argued that the levee board did waive such claim? To hold with appellant surety company is to ascribe to the levee board, and by inference only, the intention to give away its vested right to an action of damages of over four hundred thousand dollars; and to give away that sum when one hundred sixty thousand dollars thereof was secured by the appellant company. So to hold is to ascribe to the levee board and the contractor an intention flagrantly contrary to the fundamental law.

But it is said that performance of the work, completion of the work by Clark, a member of the partnership which was the original contractor, and appellant's principal, discharged appellant by satisfying the obligation of its bond.

What was the obligation of appellant surety company? It was to "indemnify and save harmless the said obligee from any pecuniary loss resulting from the *breach* of any of the terms, covenants and conditions of the said

contract on the part of the said principal to be performed." The obligation of the surety company then is to save harmless the obligee from loss resulting from a breach of the contract. The breach of the contract is admitted by the demurrer. . The loss resulting from that breach is admitted by the demurrer.

The principal in the surety's bond *never performed the first contract*. When Clark was performing the second contract, we do not see how it can be said that he was also performing the first contract. As we see it, the obligation of the surety was a promise to indemnify the obligee against loss resulting from a *breach* of the *first contract*. The principal was to *perform that contract according to the contract*. His performance of some other contract entered into by him as a result of his breach of the first contract affords the surety company no escape from liability on its bond.

Argued orally by *W. M. Hall*, for appellants, and *A. W. Shands* and *E. F. Noel*, for appellee.

SMITH, C. J., delivered the opinion of the court.

This is a suit brought by the state revenue agent by which he seeks to collect money alleged to be due the Yazoo Mississippi Delta levee board, and the case comes to this court on an appeal to settle the principles of the case from a decree overruling several demurrers to the bill. The bill alleges in substance that in November, 1916, R. T. Clark, R. L. Cheshire, R. P. Harris, L. C. Dulaney, and C. H. Dulaney, doing business under the firm name of R. T. Clark & Co., entered into a contract with the Yazoo Mississippi Delta levee board by which they agreed to construct, according to certain specifications, a designated portion of a levee along the Mississippi river at and for the sum of twenty-eight and one-half cents per cubic yard, the performance of which contract was guaranteed by a bond on which the United States Fidelity &

Guaranty Company is surety.  One of the allegations of the bill is that—

"On the 30th day of April, 1918, at a time when the said firm of R. T. Clark & Co. had completed seven per cent. of the work called for, by the said contract, the said R. T. Clark & Co. declined to proceed further with their said contract and notified the then commissioners of said district that they were unable to proceed further, and wholly abandoned the said contract.  Complainant here charges that the said R. T. Clark, R. P. Harris, R. L. Cheshire, C. H. Dulaney, and L. C. Dulaney thereupon became liable to pay to the board of levee commissioners for the Yazoo Mississippi Delta levee district the difference between the price at which the commissioners could secure the work done in accordance with the terms of the contract, and the said United States Fidelity & Guaranty Company as surety on the bond of said contractors likewise became liable in the amount of the penalty of their bond, to-wit, the sum of one hundred sixty thousand dollars.  Complainant further shows that the average price per cubic yard of the original contract was twenty-eight and one-half cents, and the total amount to be paid under said contract was the sum of eight hundred five thousand one hundred seventy-five dollars.  Complainant would further show that the said bond executed by the United States Fidelity & Guaranty Company contains many provisions with reference to notice being given to them, and as to time within which suit might be brought, all of which provisions were either complied with by the then commissioners or were waived by the said bond company.

"Complainant would further show that upon the breach of the contract by the said R. T. Clark & Co., they diligently began to find other contractors to complete the work, and after doing everything humanly possible to get the work completed at the lowest possible price, and after inviting bids from contractors which were then and there rejected because too high, R. T. Clark, R. P.

Harris, and R. L. ·Cheshire, doing business under the firm name and style of R. T. Clark & Co., being a different partnership from the original contractors, but all of the members of the second firm being members of the first, became and were the lowest and best bidders, and contract was accordingly entered into between the commissioners and the new firm of R. T. Clark & Co. to do the same work, which said contract, complainant charged upon information and belief, was in the same words and figures as the contract made Exhibit J hereto, except as to the dates, names of members of the partnership, and schedule of prices;.but complainant would show that the time for the completion of the work was, and said time was extended from November 1, 1919, as provided in the original contract to January 1, 1920, and the price for the doing of the work was increased so as to make the average price per cubic yard forty-five cents, and the total amount to be paid for the completion of ninety-three per cent. of the original was the sum of one million one hundred eighty-two thousand two hundred eighty-two dollars and fifty cents.  Complainant attaches hereto, as Exhibit L to this bill of complaint, copy of a schedule of prices on this second contract.  Complainant here charges upon information and belief that the commissioners in reletting this contract took every possible precaution to look after the interest of the said district, and that they obtained the lowest price that could be obtained at said time, and that the difference between the original contract price and the new contract price, to-wit, the sum of four hundred thirty-three thousand four hundred sixteen dollars and twenty-five cents, is the true measure of the liability of the members of the original partnership of R. T. Clark & Co., and of the United States Fidelity &. Guaranty Company to the extent of one hundred sixty thousand dollars.

"Complainant would further show that to guarantee this second contract the said new firm of R. T. Clark & Co. executed their bond in the sum of eighty thousand

dollars, with sureties appearing thereon, a copy of which said bond is hereto attached marked 'Exhibit M,' and asked to be taken and considered as a part of this bill of complaint as fully as if copied at length herein.''

A bond executed to the levee board by R. T. Clark & Co. for the execution of the second contract recites that—

''The condition of the foregoing bond is such, that whereas R. T. Clark & Co. entered into a contract with the board of levee commissioners of the Yazoo Mississippi Delta aforesaid, of date November 1, 1916, to do certain work therein set forth, all of which contract is made a part hereof as if fully copied herein as the same now appears on file in the said office of said levee commissioners; and,

''Whereas, certain parts of the contract have been changed in this, to-wit, that the price in said contract has been raised for the benefit of the principals hereof, and certain other changes made therein, all of which are made a part hereof as the same appears either from said bond or from the minutes of said board of levee commissioners; and,

''Whereas, it was further agreed by said principals hereto that an additional security of eighty thousand dollars should be given in addition to and concurrently with the security already given under said contract as shown by the files of the said commissioners:

''Now, therefore, if the said R. T. Clark & Co., principals hereto, shall well and truly perform their said contract according to its terms as set forth in the said contract, and by the minutes of the said board of levee commissioners, then this obligation to be null and of no effect, otherwise to be and remain in full force and effect until discharged.''

When the second contract was made, C. H. Dulaney had ceased to be a member of R. T. Clark & Co., and the firm was then composed of Clark, Cheshire, and Harris.

R. T. Clark & Co. entered upon the execution of the second contract with the levee board, and some time there-

after advised the board that they could not do the work at forty-five cents per cubic yard and asked for an increased price therefor, which increase the board granted. About this time the firm of R. T. Clark & Co. seems to have been dissolved. At all events, the building of the levee was thereafter proceeded with by Clark alone and all payments therefor were thereafter made to him alone.

The defendants to the bill are members of the original firm of R. T. Clark & Co., the United States Fidelity & Guaranty Company, surety on the original bond, the levee commissioners who voted for and allowed the increased compensation for carrying out the second contract, and the sureties on their official bonds. The sureties on the second bond executed by R. T. Clark & Co. were also made parties defendant, but the bill was afterwards dismissed by the complainant as to them.

The recovery sought is:

(1) From the original members of the firm of R. T. Clark & Co. and the United States Fidelity & Guaranty Company for the breach of the original contract, the measure of damages therefor alleged being the difference between the price agreed to be paid for the building of the levee under the original contract and that agreed to be paid therefor under the second contract.

(2) From R. T. Clark and the levee commissioners who voted therefor and the sureties on their bonds of the compensation paid to R. T. Clark by the levee board in excess of the forty-five cents per cubic yard for which the levee was to be constructed under the second contract.

The demurrers to the bill are by R. T. Clark, R. P. Harris, L. C. Dulaney, C. H. Dulaney, and the United States Fidelity & Guaranty Company.

The appellants' contentions are: (1) That the bill states no cause of action against any of them, and (2) that the bill is also multifarious.

It is manifest from the allegations of the bill and the exhibits thereto that L. C. Dulaney was not a party to

either of the contracts sued on and as to him the bill should have been dismissed.

The bill sets forth two separate and distinct causes of action: (1.) A breach by R. T. Clark & Co. of the original contract for the construction of the levee; and (2) the payment to R. T. Clark for completing the levee under the second contract of compensation in excess of that provided by the contract. These causes of action can best be dealt with here separately.

1. The ground on which it is claimed that no recovery can be had on the appellee's claim for damages because of the breach by R. T. Clark & Co. of the original contract for the construction of the levee is that the breach of that contract was waived by the levee board when it entered into a new contract with R. T. Clark & Co. for the completion of the levee.

Counsel for the appellee deny that the breach by R. T. Clark & Co. of the first contract was waived by the levee board: First, for the reason that it does not appear from the allegations of the bill that the board intended so to do; and, second, that even had it intended so to do, the levee board was without power to waive the breach of the contract or to release R. T. Clark & Co. or their bondsmen from liability therefor.

The bill alleges a total breach and abandonment by R. T. Clark & Co. of the first contract for the construction of the levee, and a general invitation by the levee board for bids for a new contract for the completion of the levee; that the lowest bid received therefor was by R. T. Clark & Co., for which reason the new contract was awarded to them. This allegation of the bill necessarily negatives any intention on the part of the levee board to waive the breach by R. T. Clark & Co. of this contract, and clearly sets forth that the entering into by it of the second contract with R. T. Clark & Co. was brought about solely because their bid for the completion of the levee was lower than that of any of the other bidders therefor.

But it is said by counsel for the appellant that the recitals of the bond executed by R. T. Clark & Co. for the performance of the second contract a copy of which is filed as an exhibit to the bill, contradict the allegation of the bill that the second contract was entered into because of the breach by R. T. Clark & Co. of the first contract, and indicate that the second contract was simply an agreement to pay an increased price for building the levee, and they invoke the rule that where the allegations of a pleading contradict the recitals of an exhibit thereto, the exhibit and not the pleading controls. This rule has no application here for the reason that the bond executed for the performance of the second contract has no sort of bearing on the rights of the parties hereto growing out of the first contract and was made an exhibit to the bill, not as a basis of the liability claimed for the breach of the first contract, but as a basis for the claim asserted against the sureties on that bond for the recovery of the money paid R. T. Clark under the second contract in excess of the amount provided for therein. This claim, as hereinbefore set forth, has been abandoned, and the bill has been dismissed as to the sureties on the second bond. Profert of this bond was not necessary in so far as liability is sought to be predicated, and on the breach of the original contract it was pertinent only to the case originally sought to be made against the sureties thereon.

Since the bill negatives any intention on the part of the levee board to waive the breach by R. T. Clark & Co. of the first contract, we are not called on to determine whether it had the power to waive it.

2. The Yazoo Mississippi Delta levee board was originally created by chapter 168, Laws of 1884, and was recognized and continued by section 227 *et seq.* of the state constitution. The right here claimed for the levee board to pay Clark compensation for building the levee in excess of that provided in his contract therefor is based on the grant to the board by section 27 of the statute by

which it was created of "full power and authority . . . to contract with any person . . . for the construction, maintenance or repair of the whole or any part of its line of levees," etc., and on the grant to it by section 232 of the constitution of the "supervision of the erection, repair, and maintenance of the levees in their respective districts." It is unnecessary for us to here decide the extent of the power conferred by the statute and constitution upon the levee board, for it is manifest by section 96 of the constitution that the broad language in which the power here granted is couched must be restricted so as not to authorize the board to grant extra compensation to any public contractor after the contract is made. The section is as follows:

"The legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law," etc.

It is true that the legislature only is mentioned in this section of the constitution, but nevertheless it binds not only the legislature but all subordinate state agencies created or controlled by it; for what the legislature cannot do directly it cannot do indirectly by delegating the power so to do to a subordinate agency. The Yazoo Mississippi levee board, except as may be otherwise provided by the constitution, is subject to the supervision and control of the legislature and can exercise, unless the constitution otherwise provides, only such powers as may be delegated to it by the legislature. *Bobo* v. *Levee Commissioners*, 92 Miss. 792, 46 So. 819.

R. T. Clark was, of course, a public contractor, for the levee which he contracted to build was for the public, and the compensation paid him therefor in excess of that for which he contracted to build the levee was paid to him after his contract was made; the payment of this extra compensation therefore comes within the express prohibition of the constitution, and consequently R. T.

Clark has no right thereto and must account therefor to the levee board or to the revenue agent who represents it here.

3.  The bill of complaint is multifarious, and the demurrer should have been sustained on that ground.  The two causes of action sued on flow from different and disconnected sources, and the parties defendant thereto are different.  If R. T. Clark had been sued alone, it may be that the two causes of action could have been joined under section 598, Code of 1906; Hemingway's Code. section 358, as to which we express no opinion; but this section does not authorize the joinder of separate causes of action against disconnected defendants.

Because of this defect in the bill, the judgment of the court below must be reversed and the cause remanded.

*Reversed and remanded.*