## D. H. BAUGH *v.* B. F. H. LAMB.

1. SWAMP LAND COMMISSIONER: DUTIES AND LIABILITIES OF.—The commissioners appointed under the act of 16th March, 1852, for the sale of the swamp and overflowed lands in the State of Mississippi, are bound to appropriate the proceeds, arising from the sale of said lands, to the general purpose of leveeing and draining swamp and overflowed lands. The purpose is general and for the public good; and an individual, who is the purchaser of swamp and overflowed lands, cannot recover from the commissioner damages for a failure to have his particular land drained and leveed, or the amount expended by him for draining and leveeing the said land.

2. PUBLIC OFFICERS: LIABILITY OF, TO PRIVATE INDIVIDUALS FOR OMISSIONS OF PUBLIC DUTY.—Public officers are liable for omissions or breaches of public duty, involving private injury, and at the suit of the party injured. 13 S. & M. 394; 4 McCord, 36; 9 Johns. 384, 385.

ERROR to Circuit Court of Rankin county. Hon. John Watts, judge.

*G. L. Potter,* for plaintiff in error, cited *Brown* v. *Lester,* 13 S. & M. 394; *Somerall* v. *Gibbs,* 4 McCord, 36, and cases cited; *Jenner* v. *Joliffe,* 9 Johns. 384, 385; Act of 16 March, 1852, page 33.

*J. L. Hargrove,* on same side.

No counsel for defendant in error.

HARRIS, J., delivered the opinion of the court.

By an act of Congress, United States, passed the 28th September, 1850 (to enable the State of Arkansas and other States, including this State, to reclaim the swamp lands within their limits by levees and drains, to be by them constructed), the whole of the swamp and overflowed lands made unfit thereby

for cultivation, which remained unsold at the passage of that act, were thereby granted to those States respectively, subject to the disposal of the legislatures thereof, upon the express condition that the proceeds of said lands, whether from sale or by direct appropriation in kind, should be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid. See act, Rev. Code, page 697.

By the act of the legislature of this State, passed on the 16th March, 1852, page 33, these lands were granted (with partial exceptions) to the counties in which they were situated, subject to the conditions contained in the original grant from the United States.

By the second section of this act of 1852, page 33, it was made the duty of the boards of county police, in the respective counties in which said lands are situated, to appoint a commissioner or commissioners, not to exceed three, to be styled, "commissioners of swamp lands," who should give bond, payable to the State of Mississippi, to be approved by the judges of probate of such counties, respectively, and after being recorded, to be filed in the Secretary of State's office, conditioned for the faithful application of said lands, or the proceeds of the sale of the same, to the purposes for which they were granted, and the safe-keeping of all funds that might come into their hands arrising from, or connected with, the disposal of said swamp lands.

The third section provided, that after the execution of the bond aforesaid, the Secretary of State, on the application of said commissioners, should furnish them with a statement of the number of acres of said lands in their respective counties; and the commissioners were, by said act, authorized to sell the scrip for cash, or dispose of it in payment for labor, at a price not less than fifty cents per acre, and to apply the said funds, or direct the labor, to the reclamation of said lands, by leveeing or draining them, etc. By the sixth section of the act, page 35, these commissioners are made capable "of suing and being sued in their capacity of 'commissioners of swamp lands,' in all matters

pertaining to the duties devolved on them by this act, or any contracts growing out of the same." And by the fourth section of the same act, the holder of said scrip was authorized to locate it on said lands, in the county designated, and a patent was to issue.

In the case before us, the plaintiff purchased scrip for two hundred acres of land at fifty cents an acre, and claims to be the owner of the title thereto, under the acts to which we have referred, by location, and compliance with the provisions of the act of 16th March, 1852.

This action is brought by him against the defendant, as "swamp land commissioner."

The declaration avers that defendant was, on the      day of December, 1857, appointed by the Board of Police of Rankin county, "swamp land commissioner," and proceeded to perform the duties of said office. That plaintiff is the legal owner of certain tracts or parcels of the swamp and overflowed land embraced in the act of Congress, and the act of the State legislature referred to (describing them), under and by virtue of the provisions of said act. That said land so owned by him "is and was susceptible of cultivation on the 24th of February, 1859, and that on that day he was entitled to receive from defendant the sum of $100, being fifty cents per acre of the money arising from a sale of said land. That defendant refused to pay on demand made of him, and asks judgment against defendant as such commissioner for said sum, etc.

To this declaration defendant demurred, the demurrer was sustained with leave to amend, and the plaintiff filed his amended declaration against defendant as swamp land commissioner, and averring his appointment by the Board of Police, as in the original declaration. But he alleges that defendant wilfully neglected and refused to execute the bond required by the statute, and proceeded to secure the scrip and money belonging to said fund, and to sell said scrip, all amounting to the sum of $2,100. The declaration further states that plaintiff is the legal owner of the land as stated in the original declaration; that being such owner by purchase of scrip from defendant,

and payment of fifty cents in money per acre therefor; and said defendant being by law bound as such commissioner to appropriate said money to the ditching and draining said land for the benefit of plaintiff, did not do so, but wholly refused, etc., but retained said money and applied it to his own use, by loaning the same at ten per cent. interest per annum.

Plaintiff then avers that by defendant's refusal to perform his duty in this respect, he was compelled to ditch and drain said land himself, which he did, making it susceptible of cultivation, wherefore an action has accrued to him to have and recover the sum of $100, with interest from the day the labor was completed. He states that by reason of defendant's failure to execute the bond required by law, he is compelled to bring his suit *on an account for labor*, filed as Exhibit A to both the original and amended complaint.

To this declaration the defendant also demurred, and the demurrer was sustained, and judgment final rendered against the plaintiff.

The rulings of the court, on the demurrers to the original and amended declarations, constitute the errors complained of here.

Testing these declarations by any known rules of pleading, whether statutory, or at common law, it would be perhaps difficult to determine, either what *form* of action the pleader intended to adopt, or what was the *cause* of action upon which he designed to base his right of recovery.

In the conclusion of the amended declaration, the pleader says, "that by reason of the defendant's failure to execute his bond as commissioner, plaintiff is compelled to bring his suit '*on an account for labor*,' filed as Exhibit A to both the original and amended complaint." In one of the briefs filed for plaintiff in error, it is said by counsel, speaking of the demurrer to the amended declaration, that it may well be regarded as frivolous. "Plaintiff *does not* sue on any *special contract*, but *for a breach of official duty*, in a matter in which he has personal interest, and such breach is expressly charged."

Whether the action is for work and labor in reclaiming plain-

Baugh v. Lamb.

tiff's swamp land, or whether it is founded upon the idea of defendant's breach of official duty, in not causing plaintiff's land to be leveed and drained, or not paying plaintiff for doing it himself, or not paying back to plaintiff, as his share of the swamp land fund, the whole amount he paid for his scrip, as so much money he was entitled by law to have applied to the leveeing and drainage of his particular land (all of which views have more or less prominence in this declaration); in neither view is it legally possible to maintain this action upon the facts here appearing.

The plaintiff's hope of recovery seems to be based upon the idea that each purchaser of scrip locating his land and receiving title thereto under the act of 1852, acquired with the land the right to have the money paid· by him for the scrip expended towards reclaiming his particular land, or paid to him if he reclaimed it himself; and this seems to be the foundation of the breach of official duty, or the implied contract, relied on for a recovery here.

This is an entire misconception of the rights of the landowners, as well as of the duty and obligation of the commissioners under this act.   It does not contemplate an application of the fund for special private advantage, but for the general good of the county, section, or neighborhood in which the land is situated.   It contemplates a system, established by the original act granting the land to the State.   This act of Congress was designed "to enable the State to construct necessary levees and drains to reclaim the swamp and overflowed lands. therein," and the grant is made upon that express condition.

The duty of the commissioner, imposed by the act of the legislature, was public and general, not private or special.   The defendant was not bound, as alleged, to appropriate the money received from plaintiff for scrip to draining and ditching plaintiff's land, for his benefit alone, and without regard to the object intended by the original grant.   Nor was he bound to appropriate said fund to the payment of plaintiff for any labor which plaintiff voluntarily, without defendant's authority, expended on his own land.

We do not question the correctness of the doctrine, held in the case of *Brown* v. *Lester*, 13 S. & M., page 394, and other cases cited to the same point, that public officers are liable for omissions or breaches of public duty, involving private injury. They correctly state an old and familiar rule. But in this case the declaration wholly fails to present such a case. The allegation of the declaration relied on, in the argument of counsel, is that the defendant did not appropriate the money received by him from plaintiff for land scrip " to ditching and draining his land for the benefit of plaintiff." This was not the defendant's legal duty. His duty was to reclaim the swamp and overflowed lands in his county generally, by " leveeing and draining" them, and to appropriate for that purpose the money received from the sale of scrip, or the labor obtained by its use, as a common fund for the accomplishment of this general purpose.

Plaintiff has no right, therefore, to complain that the money he paid for his scrip was not appropriated to the reclamation of his land.

Both the original and amended declarations wholly fail to state any cause of action, and the demurrers were therefore properly sustained. Let the judgment be affirmed.