NATIONAL SURETY Co. *et al. v.* MILLER, STATE REVENUE AGENT.

(En Banc. Oct. 21, 1929.)

[124 So. 251. No. 27782.]

Maynard, Fitzgerald & Venable, of Clarksdale, **Wm. M. Hall**, of Memphis, Tenn., and **Pollard & Hamner**, of Greenwood, for appellants.

**Engle & Laub,** of Natchez, for appellants.

Shands, Elmore & Causey, of Cleveland, for appellee.

Argued orally by **W. W. Venable**, for appellant, and by **A. W. Shands**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The board of levee commissioners for the Yazoo-Mississippi Delta was incorporated under chapter 168, Laws 1884, and sections 228-232 of the Constitution recognized and continued the said board in existence, with the jurisdiction conferred upon it now to be mentioned. By section 4 of the said chapter of said laws it was enacted that the said board "shall have power, and it is hereby made their duty to build, rebuild, strengthen, elevate and maintain the levees upon and along the Mississippi river front, in and through the counties" of their district, and after further elaborations and grants in said section of this power, among which expressions is, "and may make all contracts for the work and all needful regulations and do all acts necessary to protect their said district from overflow by the waters of the Mississippi river," the act returns to the particular subject in section 27 and confers the widest discretion in these matters. Construing these sections our court said in Ham v. Board of Levee Commissioners, 83 Miss. at pages 552, 553, 35 So. 943, 946: "In view of the generality and broadness of the terms employed in granting powers to the appellee board, it is plain that it was the intention to vest the boards of levee commissioners with plenary authority to deal with the 'erection, maintenance and repair' of the levee system at their discretion, for the purpose of protecting the property of their respective districts from loss and destruction."

On November 1, 1916, the board let a contract to R. T. Clark & Co. to rebuild, strengthen, and elevate approximately sixteen miles of the levees. Owing to conditions which are fully set out in the statement of facts made a part of our opinion in Clark & Co. v. Miller, 122 So. 475, the board on April 30, 1918, entered an order increasing the contract price, and the work thereupon proceeded, but

under still greater difficulties, until the end of the year 1919, when the time for the completion of the contract expired under its terms, but when in fact only forty-eight per cent. of the work had been completed. The contractor was in a broken financial condition, their equipment was worn-out and in urgent need of replacement, labor was difficult to obtain and then only at large wages, all necessary supplies had advanced in cost beyond all prices theretofore known, and the contractor had informed the board and its engineers that he could go forward but a little while longer until complete bankruptcy would take him from the work. The board made efforts everywhere and in every available manner to get other contractors or to secure some other means to progress with the work, but without the slightest success. The chief engineer after a complete survey reported that no contractor or other living person could do the work at the then contract prices, nor for less than an increase of approximately seventy per cent., and the engineers were warning and threatening the board with the imminence of the danger of an annual major flood before the work would be finished unless the same were pressed forward with renewed energy. The levees on the Arkansas side were being built, and it was no less than a certainty that, unless those on the Mississippi side were also brought to standard, disaster to lives and millions of property would be the result. The Governor of the state was urging action, the attorneys of the levee board and the attorney-general of the state gave it as their mature legal opinion that the board had the legal power and authority to make a further increase in the contract price in order to secure the going forward with the work, without which increase it had become evident to all the work would not and could not be done.

The board made the increase, and the work was finally finished and in time to meet the flood of 1922, these be-

ing the only levees which fully withstood that flood, and likewise the greater flood of 1927, thereby exonerating the wisdom and foresight of the board in matter of fact, whatever may be the opinion as to its decision in point of law. The increase in the contract prices amounts in the aggregate with interest to more than a half-million dollars. The state revenue agent sued the contractor and the members of the levee board, who voted for said increase, to recover the said amounts of the said increase with interest, and he obtained a decree therefor in the trial court against the contractor and the said members of the said board.

The suit is based upon section 96 of the Constitution, which reads as follows: ''The legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasion, preventing or suppressing insurrections.''

Under this section the appellant contractor is liable as was settled in Clark v. Miller, 142 Miss. 123, 105 So. 502, and the decree is correct in that respect. But there remains the question whether the appellant members of the said board are individually liable and on their bonds.

Although the situation which confronted the levee commissioners was grave and urgent, in fact to the utmost distressing, and although they had the opinion of their own attorneys and of the attorney-general of the state that they had the power to make the said increase in compensation to the contractor, and although they have in their favor the well-supported finding of fact by the chancellor that they acted in entire good faith and without intention of any wrong, yet when we look at the plain terms of section 96 of the Constitution, and contemplate

the spectacle of trusted public officers invested with power over large public funds turning over these funds in what now appears to us to have been a violation of a salutary constitutional provision so clear that it is not easy to see why it was not clear to them at the time, we may confess some difficulty in passing over such a violation to a conclusion that these commissioners are not personally liable. But in this case, as in all others, when we find the course for our guidance well marked in the "uniform and solemn language of the common law," there being no express statute providing otherwise, it is our duty to follow.

It is the uniform and solemn language of the great weight of the decisions that a public board and the members thereof, so long as they act in good faith and from honest motives, and there is no express statute making them liable, are to be protected from the consequences of an erroneous decision when the matter upon which the action was taken was one belonging to the general class of cases within the cognizance of said board, or as otherwise termed was within the subject-matter of the general jurisdiction of the board, or, again, was within the scope of the subject-matter over which the board has general jurisdiction. The principle that protects the judge of a court of general jurisdiction against liability for erroneous action in relation to a matter within his jurisdiction and about which he is called on to decide under the law and the facts, in which he is to pass judgment, in other words, is to adjudge the issue one way or another, is applied to all boards which exercise semi-judicial or quasi-judicial powers, for the principle stands upon the same basis of reason as does the rule with respect to judicial officers; the only qualification being that as to quasi-judicial officers their acts must be bona fides and free from fraud and corruption. 22 R. C. L., pp. 485,

486; 46 C. J., pp. 1043, 1044; 23 Am. & Eng. Ency. Law, pp. 375-377.

" 'The doctrine which holds a judge exempt from a civil suit or indictment, for any act done, or omitted to be done by him, sitting as judge," said Chief Justice KENT in Yates v. Lansing, 5 Johns. (N. Y.) 282, "has a deep root in the common law. It is to be found in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government." And after reviewing the long line of English cases, he quotes with approval the first great case on the subject that received review in this country, Phelps v. Sill, 1 Day (Conn.) 315, wherein it was said that: "It was a settled principle, that a judge is not to be questioned in a civil suit for doing, or for neglecting or refusing to do a particular official act, in the exercise of judicial power. That a regard to this maxim was essential to the administration of justice. . . . The rules and principles, which govern the exercise of judicial power, are not, in all cases, obvious; they are often complex, and appear under different aspects to different persons. No man would accept the office of judge, if his estate were to answer for every error in judgment, or if his time and property were to be wasted in litigations with every man whom his decisions might offend." And in concluding his opinion, the Chief Justice, JAMES KENT, perhaps the most eminent name in all the literature of the law, observed: "Judicial exercise of power is imposed upon the courts. They must decide and act according to their judgment, and therefore the law will protect them. . . . No man can foresee the disastrous consequences of a precedent in favour of such a suit. Whenever we subject the established courts of the land to the degradation of pri-

vate prosecution, we subdue their independence and destroy their authority."

Equally is it to be said that when we create boards and commissions and invest them with high duties and powers towards the accomplishment of great public objects, if we are to subject them to actionable liability for errors of decision and judgment and cast their estates in ruin, although they acted within their jurisdiction and in good faith, we will have only insolvents in office, or else those who will be so fearful of disaster to their private fortunes and the safety of their families that the rule of their conduct will be that of nonaction or of action so feeble and halting and cautious, their performances so paralytic of the vigor of decision, that they would become little more than objects of commiseration and at last of contempt.

The whole matter has been summed up by the supreme court of the United States in an opinion by Justice FIELD, in Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 651, with language so apt and comprehensive that the case has become the leading expression on the point, and the quotation now made from that opinion has been accepted in practically every jurisdiction as the settled law on the subject: "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars

the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.''

So in the case at bar. The levee board had jurisdiction over the subject-matter. It was within the general scope of their jurisdiction to build the levees, or to repair or to reconstruct them and to do all things needful to the accomplishment of that object. To contract with a contractor and to pay said contractor to build or rebuild

or repair the levees was a function within the general scope of their jurisdiction; it was a subject-matter over which they had jurisdiction. In their decision in respect to making the contract here involved they mistook and exceeded their legal powers, but it was nevertheless of a matter within the subject-matter over which they had general jurisdiction.

It is, as we think, just at this point that the divergence of opinion arises. We submit that it arises out of a confusion of legal power with jurisdiction, as if synonymous; whereas, in respect to the question here in hand power is distinguished from jurisdiction. That distinction is well illustrated by Justice FIELD in the above quotation when he refers to the action of a court, which although it has general jurisdiction over the subject of criminal offenses, yet sentences a convict to a greater punishment than that allowed by law. As to the excess punishment there was an absence of legal power, but there was present the jurisdiction over the subject-matter. If, on this question of immunity, we shall consider jurisdiction as no greater than legal power, then immunity disappears, and all that the law throughout generations has said on that subject is laid aside. For so long as officers act within their legal powers there is no occasion for immunity. The very term presupposes error —action without or beyond legal power. And it can make no essential difference in legal effect that the power which is absent, is absent because it has never been granted, or, on the other hand, is absent because it is prohibited. In either case it is absent, does not exist. We cannot grasp the conception that nonexistence can be less than nonexistence, or that there can be different kinds of nonexistence, or that that which is absent can be more absent. When a power is expressly prohibited, it may for that reason be the more difficult to convince the trier of the facts that the officer has acted in good

faith, and that his conduct has been the result of an honest error; nevertheless when, as is the case here, the good faith and the honesty of the error, is established in the evidence, and admitted in the argument, every distinction, for all the practical purposes of decision, in a case such as this, disappears as between want of power because not granted and want of power because prohibited.

Pertinent to the thought just expressed it may be observed that the record discloses that all the discussions which arose among the members of the levee board respecting their legal power and authority to take the action upon which this suit is based, and all the argument and progress of opinion on the part of their attorneys and of the attorney-general of the state in advising the commissioners that they had the legal power to take their said action, following which they did act, turned upon the question whether section 100 of the Constitution stood in the way. Section 96 was never mentioned. It did not at the time occur to the attorney-general or to the attorneys of the levee board, or to any one else, so far as the record discloses, that section 96 was, or would be, in any way an operative factor. Apparently, it was supposed that the prohibition of that section is one directed solely against legislative enactment; the fact being that the legislature only is mentioned in section 96, and the fact being further that it had never been held to apply to any other state agencies until the case of Clark v. Miller, 142 Miss. 123, 105 So. 502, was decided by this court in 1925. Clear as it may seem to us now, it cannot justly be maintained, as we think, that the mistake of the board and of their attorneys and of the attorney-general in supposing, as they must have supposed, that section 96 applied only to the legislature, is a mistake so utterly indefensible as to divest them, as a matter of law, of the defense of good faith and honest error; and unless the

latter can be done there can be no liability, since they were acting within the scope of their general jurisdiction.

The ancient and established principles to which we have in the main addressed ourselves in the foregoing paragraphs have long been well recognized in this state. In Bell v. McKinney, 63 Miss. 187, a mayor fined and imprisoned a person for an offense committed outside the limits of his municipality. He had no legal power so to do, and in it he clearly exceeded his powers—in fact, he had no power whatever to do what he did. But in a suit against him because of it, the court in recognition of the aforementioned established principles said: "The extent of his authority was to have required appellee to give bond or recognizance to appear at the circuit court. But as he had jurisdiction as a conservator of the peace of the offense charged and acted in good faith, he is not liable under these circumstances for errors of judgment or mistakes of law committed in the execution of his office." In Paxton v. Baum, 59 Miss. 531, a suit against a member of the board of supervisors for appropriations of money on public contracts not let in the manner provided by law, in other words upon void contracts, the court expressly declared that it is "the well-settled rule of the common law that for errors or mistakes a public officer acting judicially or quasi-judicially is not liable," and in holding the board not liable, because the appropriations were made to "objects authorized by law," using that term, as it appears from the entire opinion, as being synonymous with the term "jurisdiction of the subject-matter," the court concludes its opinion in these words: "Manifestly it is impossible, after we pass the point of corruption to draw any line other than that named by us, namely, liability where the *subject-matter* of the appropriation is beyond the jurisdiction of the board; non-liability where the *object* is within the juris-

diction, but there has been a mistaken exercise of legal power." To the same effect is Paxton v. Arthur, 60 Miss. 832, in which the court said if the appropriations were honestly made, though in mistake of law or fact and "were to an object which, under some circumstances, might lawfully be made," the members of the board are not liable for appropriations to such objects.

But the case most squarely in point with the case at bar is State to Use of Lincoln County v. Green, 111 Miss. 32, 71 So. 171, 172. There Green was the county superintendent of education, and among the several items upon which he was sued was the issuance of illegal pay warrants in the aggregate of four thousand seven hundred dollars paid out to teachers *in excess of the amounts called for by their contracts*—a thing as much and as clearly within the prohibition of section 96 as is the case now at the bar. The court, however, adhering to the same ancient and established principles that "a public officer is not liable to an action if he falls into error in a case where the act . . . is one in relation to which it is his duty to exercise judgment and discretion," denied liability, and concluded its opinion in these words: "In view of the fact, therefore, that the *work paid for* by the superintendent. . . . *were within the jurisdiction of his office* and no corruption is charged, the bill fails to state a cause of action." The work paid for was within the jurisdiction of his office, says the court, and so it is in the case in hand; the sums paid were paid for work in building these levees, and building the levees was within the express jurisdiction of the levee board. The court in the Green case did no more than to make, in other terms, an application of the language used by the court in Paxton v. Baum wherein the court there said: "It is for money appropriated to something for which the law does not permit it to be appropriated at all, in any way or under any circumstances, that members are personally

liable. . . . It is what the money is appropriated to, and not how it is applied, that furnishes the test of personal liability for it. 'Object' signifies the thing aimed at, the end sought to be accomplished.'' Applying this language here, the object or thing aimed at, the end sought to be accomplished, was the building of the levees, the thing that the law placed within the jurisdiction of the levee board, and charged them with the duty to do.

Much reliance is placed by appellee on Miller v. Tucker, 142 Miss. 147, 105 So. 774, but in that case it will be observed there was no purpose to overrule the case of Paxton v. Baum, or similar cases, or to disturb the principles of those cases; the same principles being in fact reaffirmed by Miller v. Tucker, as the opening pages of the opinion reveal. Such being the case, appellants have also cited it as an authority in their favor. It was rather the purpose of the Miller v. Tucker case, to apply as to some of the items therein an express statutory personal liability in respect to members of the board of supervisors; but there is no such personal liability statute in cases of levee boards, and we must proceed in the case now before us under the common law. Unless the Miller v. Tucker case, is construed as we have just stated, then it is in conflict with State to Use of Lincoln County v. Green, which is not even referred to in Miller v. Tucker. It may be that as to one or two others of the several items dealt with in the Miller v. Tucker case the exact facts touching those items did not bring them without the rule of nonliability that in its main or major aspects was being sought to be applied by the court. Of a somewhat similar situation it was said by the court in Leavenworth v. Reeves, 106 Miss. at page 731, 64 So. 660, 663: ''The case . . . relied on by appellee is not in conflict with the view here expressed, and the rule applied in that case is the same as the rule applied here. It may be that the facts of that case did not bring it within the

rule, and to that extent the court was then in error, and conceding, for the purpose of the argument, that this is true, that fact is of no importance here, *for the rule itself was left by the court undisturbed."* Principles control decision; when the principle is clear and well established, the court applies the facts of each successive particular case as best it can to that principle, and though this may be inaptly or even erroneously done in some detail in one case, that alone and of itself does not overthrow the principle, which lives on as before.

Cases in other jurisdictions, such for instance as the case of Chippewa Bridge Co. v. Durand, 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931, have been strongly relied on by appellee. These cases in general were where the officers, not by mistake or erroneous interpretation or decision, but purposely and knowingly wholly disregarded the fundamental requirements of the procedure, which were a part of the essentials of the exercise of their jurisdiction, and awarded contracts privately instead of proceeding by public advertisement. We are not called on to expressly differentiate these cases for several reasons, one of which is that as to the case in hand there was no requirement in the law how the levee board should let its contracts. It is admitted in the argument that the levee board could let all its contracts privately under the law; or so far as concerns any specific or particular directions in the law the levee board could have done the work itself with its own implements and with day and salaried labor; and again, when we find the principles which control a case well established in our own decisions, there is no requisite occasion to deal with cases in other states beyond a reference to those outstanding and leading opinions from the great masters of the law who have laid down and illustrated the principles which our own court has long recognized and followed.

Finally, it is contended that when the board had let its contract its authority in that respect was exhausted, and that in its subsequent action in making its amended contract, or its contract for the increased compensation, it did so without authority, that is to say, in want of authority, its authority having been exhausted; and the argument is that, such being the case, its latter action was beyond its jurisdiction. If the board had no legal power, it would be an indifferent matter, so far as concerns the question before us, whether there was an absence of grant of the legal power, or it was absent because prohibited or was absent because already exhausted. In either of these events the power was absent; nevertheless the action taken was within a subject-matter, which subject-matter in turn was within the general jurisdiction of the board. The contention is no more than the other contentions that when there is an absence of legal power there is an absence of jurisdiction; it is the same contention merely in another form. The issue for the board to decide was whether it had the legal power and that question involved a determination as a legal issue, along with all the other legal issues, whether its power had been exhausted, and for honest legal error in arriving at their conclusion in that respect the members are as much within the reason of the rule, and therefore within the rule itself, as in any other respect touching the questions of law and fact which, within the general scope of the subject-matter of their jurisdiction, they were called on to decide.

The case at bar, summarized, is that the action of these members of the levee board complained of was in respect to a decision of the board within the scope of the subject-matter over which the board had general jurisdiction; the object for which the money was appropriated and paid by it was to secure the building of the levees, the building of which was not only within the jur-

isdictional province of the board, but was its duty. The thing aimed at, the end sought to be accomplished, the work for which these payments were made, was to an object or end the consummation of which was the chief purpose in the creation of the board and the vesting in it of its jurisdiction;—that was its general jurisdiction. In their action the error was free from fraud and corruption, was in good faith. This must be the end of the matter unless the court is to hold that in the absence of legal power there is liability, which is to say, if there is error with respect to the legal power and the legal power is exceeded, then there is liability; and as already pointed out, this would be to deny the doctrine of immunity and cast it out of the books. This would permit liability, for instance, in a case where a board has acted upon an apparently valid statute clearly giving a power, but the statute is subsequently declared unconstitutional, so that it had never had any real existence. Thereupon suit is begun against the members of the board for acting without legal power, and being without power they would have no defense. Illustrations of the unjust and mischievous consequences of such a doctrine could be extended almost beyond number. To uphold liability whenever, without more, there has been an error of law in the actions of boards or commissioners would be to require of men, who as a rule are not learned in the intricacies of legal science, such a perfect knowledge of the law, such a superiority over all its uncertainties and obscurities, such an infallible foresight of what will be adjudged in the last resort in the future, as none however eminent on the bench or at the bar can for a moment be supposed to possess. Such a rule cannot, as we think, be supported in just reason, and, as we have attempted to show, is not in accord with maturely established principle.

The decree will be affirmed as to the appellants R. T. Clark & Co.; but as to the remaining appellants the decree will be reversed, and the bill dismissed.

Affirmed in part, and in part reversed.

**Ethridge, P. J.,** delivered the dissenting opinion.

It is an old adage in legal circles that hard cases make bad law. The case at bar is a conspicuous example of the applicability of that adage. The situation which confronted the levee board, the contractor, and public was such as to elicit the sympathy of all right-thinking persons, and I regret that I cannot concur in the majority opinion. But courts are constituted to administer justice according to the law of the land, and not according to the wishes of any person or persons not crystallized into law.

It seems to me that the proposition confronting us now is not what powers the levee commissioners had as an original proposition in making a contract, nor what liberties they would be allowed in departing from the directions and public policy of the Constitution and the legislature, acting within the scope of their jurisdiction or powers. The contract had already been let to build a specific levee, on specific terms and specifications, and for a stipulated price agreed upon by the levee commissioners and contractors which constituted a valid, binding contract between them, and the contractors were obligated to do precisely the work that they did do. After the contract became binding on both parties, the levee commissioners undertook to increase the compensation of the contractors without canceling or declaring the contract breached or avoided.

In my view, when the board let the contract, it exhausted its power with reference thereto so long as the contract remained in force, regardless of all other considerations. In other words, in letting the contract, the

board had exhausted its constitutional powers with reference thereto so long as the contract remained in force. The hardships involved are of no legal consequence, and do not authorize the board to increase the compensation. What the board undertook to do in this case was merely to increase the contract price. The original contract was in full force, and the contractor had never abandoned the contract, but was then in the performance of his contract, although it appeared that he might not be able to complete it for the want of funds and credit, due to the greatly increased cost of labor and materials following the conditions brought about by the World War. This effort of the board to increase the compensation was directly prohibited by the Constitution itself in terms so plain, it seems to me, that ''he who runs may read,'' and although reading in a run may understand. It stands out like a mountain in the landscape which no sympathy or sophistry or combination of them can obscure. This section reads: Section 96. ''The legislature shall never grant extra compensation, fee, or allowance, to any public officer, agent, servant, or contractor, after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law; but appropriations may be made for expenditures in repelling invasion, preventing or suppressing insurrections.''

It appears that the levee commissioners and their attorneys and legal advisors did not have this section of the Constitution before them, and were, apparently, not aware of its existence; nevertheless, they must be assumed to have had knowledge of it, and its provisions cannot be defeated by the ignorance of any body, or any officer, or department of the government. The levee commissioners clearly had no jurisdiction to do that which the law, and in this case the supreme law, prohibited them from doing. The levee commissioners and their advis-

ors were familiar with section 100 of the Constitution, which reads as follows: "No obligation or liability of any person, association, or corporation held or owned by this state, or levee board, or any county, city, or town thereof, shall ever be remitted, released or postponed, or in any way diminished by the legislature, nor shall such liability or obligation be extinguished except by payment thereof into the proper treasury; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; but this shall not be construed to prevent the legislature from providing by general law for the compromise of doubtful claims."

The levee board and its attorneys, and the attorney-general of the state, being confronted with this provision of the Constitution, conceived that they could not release the contract in favor of a state made to the state's advantage with the contractor, by recognizing the hardships imposed upon the contractor by the great rise in the cost of labor and material after the making of the contract, and the threatening inability to complete the work, although they thought they could relieve the situation by granting extra compensation to the contractor for the work done and to be done. Not only was the increase applied to the unfinished work, but it was applied to the work already done. This was clearly within the very teeth of section 96 of the Constitution.

In construing the constitutional provisions, all sections of the Constitution in pari materia are read together and construed as a whole. Let us then consider these two sections above set out with the sections of the Constitution providing for the levee system of the state, and see what a fair interpretation of all of them will be. Section 227 of the Constitution provides that a levee system shall be maintained in the state as provided in the article referring to article 11 of the Constitution.

Section 228 recognizes the two levee districts formerly created by law, and provides that they shall remain so until changed by law, but that the legislature may hereafter add to said district any other alluvial land in the state.

Section 229 of the Constitution provides there shall be a board of levee commissioners for the Yazoo-Mississippi Delta levee district and names the territory to compose such district, and the members to be selected therefrom by counties, and provides that in the event of a new county, or counties, being formed out of the territory embraced, they shall have representation and membership in the proper board or boards.

Section 230 provides that the commissioners shall be qualified electors of the respective counties or parts of counties from which they may be chosen, and that each shall give bond for the faithful performance of his duties, and shall fix the penalty thereof; but the penalty of such bond in no instance shall be fixed at less than ten thousand dollars, and the sureties thereon shall be freeholders of the district.

Section 231 provides for the filling of vacancies and the terms of office of the commissioners.

Section 232 provides as follows: "The commissioners of said levee districts shall have supervision of the erection, repair, and maintenance of the levees in their respective districts, and shall have power to cede all their rights of way and levees and the maintenance, management and control thereof to the government of the United States."

By section 233 the levee boards are granted authority to appropriate private property for the purposes of constructing, maintaining, and repairing levees therein, and for awarding the compensation of any lands where compensation is required, but provides in its conclusion that the legislature shall have full power to alter and amend

said several acts, and to provide different manners of procedure. The other sections of the article provide for methods of taxation and publication of expenditures, and are not pertinent to the present controversy.

Section 1 of the Constitution divides the state government into three separate departments of government, and section 2 provides that no person, or collection of persons, being or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of the said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

In Haley v. State, 108 Miss. 899, 67 So. 498, it was held that the office of levee commissioner is a part of the executive branch of the government, and that if a person who is a member of the board of supervisors of the county, which office is in the judiciary department, accepts the office of levee commissioner, by doing so vacates his office as supervisor under section 2 of the Constitution. It follows therefore that the levee commissioner is not a judicial body, but is a member of the executive branch of the government.

By section 230 the levee commissioners are each required to give a bond for the faithful performance of their duties, and the same section provides for the penalty of the bond to be not less than ten thousand dollars. This section clearly recognizes that the levee commissioners are to be held responsible for the discharge of their duties, and that bond shall be given to see that such duties are performed, carrying with it fully and clearly the idea of liability for acts done contrary to law.

Section 2997, Hemingway's 1927 Code, section 3464 of the Code of 1906, reads as follows: "The bonds of all public officers shall be made payable to the state, and shall be put in suit in the name of the state for the use

and benefit of any person injured by the breach thereof; and such bonds shall not be void on the first recovery, but may be put in suit from time to time by any party injured by the breach thereof, until the whole penalty shall be recovered.''

This section expressly makes the bonds of all public officers required to give bond subject to suit for the use of any person injured by the breach of the bond; that is, by the breach of the legal duty for which the bond was given to secure the performance.

By section 3375 of Hemingway's 1927 Code, section 4805, Code of 1906, it is provided: ''The state shall be entitled to bring all actions and all remedies to which individuals are entitled in a given state of case; it may maintain the action of unlawful entry and detainer in all cases, at its option, for the recovery of land.'' This section gives the state the same right to recover for breach thereof that other persons have, which insures the state the same right as an individual would have to bring suit. The state revenue agent is authorized by statute to bring suit on behalf of the state, county, levee board, and any municipality.

By section 8 of an act approved February 7, 1894, chapter 79 of the Laws of 1894, it is provided: ''It shall be unlawful after the passage of this act for said board of Mississippi Levee Commissioners, their officers, agents or employees, to contract any obligation, or incur any indebtedness, or to pledge the credit of the board or its revenues in any manner not authorized by law; and each violation of this section is declared a misdemeanor, and punishable by fine of not less than one hundred dollars, nor more than five hundred dollars, and such obligation or such indebtedness incurred, or pledge of credit made, shall be void.'' Laws of Mississippi Levee District (Compiled 1921) p. 118.

By section 3008, Hemingway's Code of 1927, section 3474, Code of 1906, provided: "An officer shall not enter into any contract on behalf of the state, or any county, city, town, or village thereof, without being specially authorized thereto by law, or by an order of the board of supervisors or municipal authorities."

These sections clearly prohibit the contract undertaken by the levee board by which it undertook to grant increased compensation to the contractor for the performance of his contract. The provisions of sections 96 and 100 of the Constitution are clearly intended to preserve to the public the benefit of favorable contracts obtained by it, and it is substantially to prohibit any authority of the state violating these provisions. The history of the state as shown by the various enactments of the legislature prior to 1890, and some of them since, undertaking to validate illegal contracts and release legal liabilities, and to ratify actions of local boards and bodies giving away the public advantages of contracts, and the constitutional convention, having this right before it, determined that it should not thereafter be done, and no officer, agent, or department of the government has any right to change or modify or to limit and restrict these provisions. It is almost inevitable that hardships will arise in particular cases from the operation of any general law, and the legislative body, whether a constitutional convention, or the legislature itself, have a right to weigh the advantages and disadvantages, the justice and injustice of particular situations, and to determine whether a given policy will promote the general welfare or not, and when the state has spoken through its competent authority, it is the duty of the court to obey and to give full effect to the policy thus established. The courts have nothing to do with the wisdom or folly of legislation, but they are to administer the law accepting the public policy as determined in the law enacted by the proper lawmaking body.

This court has held in a number of cases that public officers are insurers of the safety of money coming into their hands by virtue of their offices. See State v. Lee, 72 Miss. 281, 16 So. 243; Brown v. Lester, 13 Smedes & M. 392; Baugher v. Land, 40 Miss. 493; 46 C. J. 1038, section 310.

The foregoing section requiring the levee board to give bond for the faithful performance of their office is clearly an indication that they are responsible for their unlawful acts. As stated above, they are not judicial officers. Judicial officers are not required to give bond for their judicial functions. This court has solemnly declared in Haley v. State, supra, that members of the levee board are executive officers. The Constitution itself so classed them by requiring bonds for the faithful performance of their duties, and this bond itself certainly governs the duties named in the Constitution. It was therefore within the contemplation of the constitutional convention that the bond should govern the performance of all duties named in the Constitution itself.

The legislature, by chapters 169, 170, Laws of 1922, prescribed the method by which the levee board could make contracts and limited the number of employees, and fixed and regulated their compensation. The levee board took the position that this could not be done, as the Constitution had conferred jurisdiction upon the levee board, and the legislature could not control their jurisdiction thus fixed by the Constitution. In the case of Franklin v. Ellis, 130 Miss. 164, 93 So. 738, the court considered this contention, and held that said laws were valid enactments, and that the regulations thus prescribed did not unreasonably impair or restrict the jurisdiction given the levee board by the Constitution. See, also, Bobo v. Board of Levee Com'rs for Yazoo-Mississippi Delta, 92 Miss. 792, 46 So. 819.

It is clear therefore that the levee board is governed by the law in the exercise of its jurisdiction, and that the legislature has the power to regulate and control the exercise of the jurisdiction so conferred upon the levee board within reasonable limits. This will be clearly seen by reading the different sections of the Constitution above set out, and others contained in the chapter on levee commissioners in the state Constitution.

In construing the Constitution, it is a familiar rule that all parts will be construed together where they are pertinent to the subject-matter of the litigation, and it is too clear for doubt, I think, that sections 96 and 100 of the Constitution of 1890 deny the levee board any power to make any such contract or agreement as that out of which this litigation arose.

A former decision of this court, in the case of Clark v. Miller, 142 Miss. 123, 105 So. 502, clearly settled the question in so far as the power to make a legal and binding contract is concerned, by holding that neither the legislature nor any subordinate bodies of the state could authorize a violation of the provisions of section 96 of the state Constitution.

I think the statutes and decisions above set out clearly establish the principles of liability for the doing of an act prohibited by law. How can any board or body have any jurisdiction to do that which is prohibited by law?

Something is said in the majority opinion about differences between ''jurisdiction'' and ''power.'' I think these distinctions are fanciful. The principle, probably, that was operating in the mind of the writer of the majority opinion is the difference between jurisdiction and statutory directions. Black's Law Dictionary defines ''jurisdiction'' as follows: ''The power and authority constitutionally conferred upon (or constitutionally recognized as existing in) as court or judge to pronounce the sentence of the law, or to award the remedies pro-

vided by law, upon a state of facts, proved or admitted, referred to the tribunal for decision, and authorized by law to be the subject of investigation or action by that tribunal, and in favor of or against persons (or a res) who present themselves, or who are brought, before the court in some manner sanctioned by law as proper and sufficient. (Authorities cited.) Jurisdiction is a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law, and to carry his sentence into execution.'' See other definitions on page 673, Black's Law Dictionary. It will be seen from those definitions that the basis of jurisdiction is the power to hear and determine the matter.

Power is defined in several aspects by the same authority, but, as applied to constitutional law, the following definition is given: ''The right to take action in respect to a particular subject-matter or class of matters, involving more or less of discretion, granted by the constitution to the several departments or branches of the government, or reserved to the people. Powers in this sense are generally classified as legislative, executive and judicial.''

The difference between ''jurisdiction'' and ''power,'' it seems to me, is largely confined to the character or function which is being exercised. In judicial proceedings, the word ''jurisdiction'' is used instead of ''power,'' but the meaning of the two words is practically synonymous. ''Power'' is the word used generally as to legislative offices, and especially executive offices. Strictly speaking, executive officers do not have jurisdiction, but have power or powers to do a particular act, but, no matter what character of officer is acting, he must get his power to act from the law. It is true the law frequently gives him power to decide questions of fact upon which his power to act may depend, and frequently directs him to that act in a particular manner. When the power to

do a given act is conferred and no direction is given as to the manner of performance, the officer, of course, has the discretion to exercise power in any reasonable, practical way; but when he is given directions to act in a particular manner, the act is generally directory, and will be so construed unless a contrary intention is expressed in the legislative or constitutional act conferring the power. Exercise of a power, although in an improper or unlawful manner, will not make an officer personally liable, provided he acts in a reasonable manner and in good faith; but where the act is absolutely prohibited by law, he has no jurisdiction or power to do the act at all, and where bond is required of the officer, he will be liable on such bond for doing any act prohibited by the law. The condition of the bond to faithfully perform the duties of the office mean, of course, that the officer shall act therein conformably to the law in his official conduct. If he goes beyond the law and does a prohibited act, he, clearly, will be liable. This principle is recognized in all the authorities cited in the majority opinion, with the possible exception of State to Use of Lincoln County v. Green, 111 Miss. 32, 71 So. 171, which will be referred to later in this opinion. The majority opinion cites Bell v. McKinney, 63 Miss. 187. That case does not support the position for which it is cited here. In that case the mayor of a town was given the powers of a justice of the peace within the municipality, and the powers of conservator of the peace throughout the justice of the peace district, having the power to try misdemeanors where they occurred within the municipal limits, and having the power, if such occurred outside the municipal limits, to bind over the offender to the proper authorities for trial. Thus he had jurisdiction in either case to arrest the party, and it depended upon the facts as to what course he should take, but he must, at all events, exercise jurisdiction. That was strictly a court and not an ex-

ecutive officer at all. Had the plaintiff in that case sued the marshal or other executive officer who had committed him to prison after tender of the proper bond, no doubt, he would have been permitted to recover. It is a far cry from that case to this one.

The case of Paxton v. Baum, 59 Miss. 531, cited in the majority opinion, clearly recognizes liability upon the bond of an officer for doing acts prohibited by law. At page 536 of that case, the court said: ''By section 1378 of the Code of 1871, it was provided that 'the board of supervisors shall direct the appropriation of the money that may come into the treasury of their respective counties, but shall not appropriate the same to any object *not authorized by law.*' . . . The question is as to the interpretation of the expression 'object not authorized by law.' The objects to which money in the county treasury may be appropriated are designated by law, and it is not legally appropriable to any other purposes. If it is appropriated by the board of supervisors to some other object than is authorized by law, members are liable personally for it, unless they voted against such appropriation.''

As stated, what the board undertook in the present case was not to make a new contract or an original contract for building a levee, but was only to grant an increased compensation for a contract already let, and it was not within the power of the levee board to change or modify a contract under the above section of the Constitution. They were expressly prohibited from contracting for any obligation having for its object the increase of compensation on a contract after such contract was let. The compensation in the case at bar applied to work already done as well as to work to be done in the future, and the increase was not only made to cover loss that the contractor would suffer, but was to give him enough compensation to make twenty per cent. profit.

In the case of State to Use of Lincoln County v. Green, 111 Miss. 32, 71 So. 171, neither the court nor counsel, so far as the report of the case shows, referred to section 96 of the Constitution or section 100 thereof. It cannot well be said that said case has construed the provisions of section 96.

It is familiar law that the court will neither raise, nor decide, constitutional questions that are not raised by counsel; but I have never been in love with this principle. I have always thought that, where constitutional questions are directly or necessarily involved, the court ought to proceed to decide them. I think the court is presumed to know the law and should decide the law that is involved in the case, although counsel representing litigants may not raise the question, and especially statutory or constitutional provisions. If the case of State to Use of Lincoln County v. Green, supra, was undertaking to decide section 96 of the Constitution it is so palpably and clearly a wrong and mischievous decision that it should be overruled, and it was overruled, in effect, in Miller v. Tucker, 142 Miss. 147, 105 So. 774, 784 (read the Southern reporter for this case, as the official report was scrambled in the publication). As stated, in the State to Use of Lincoln County v. Green case, the court nowhere referred to section 96. The decision in that case was rendered at a time when the court was three years behind with its docket, and was making a desperate effort to catch up with the work, so that litigants could secure justice within a reasonable time. Confronted with such a situation, the court could not be expected to take up questions not raised, and specifically constitutional questions, and work out decisions on them. I think therefore that State to Use of Lincoln County v. Green, supra, even if not already overruled, is not authority, and we should now decide the question presented on its merits and give the constitutional section a fair

construction to secure the object for which it was enacted. When the case at bar was here before we decided this principle of law inconsistent with that of the Green case, and it was necessarily overruled by implication in that case as well as in the case of Miller v. Tucker, supra. In the Miller v. Tucker case it was contended that although the allowance made to the Kings Daughters and Ladies of Charity, a charitable organization, may not have been in accordance with the law, still the legislature ratified what was there done, and the court, in responding to that contention, said: "The revenue agent challenges the constitutionality of this act. As we have seen above, the act was without authority of law, there being no authority under the statutes in force at the time the allowances were made to pay out the money in this manner. Section 96 of the state constitution provides that the legislature shall never grant any extra compensation, fee, or allowance to any officer, agent, servant, or contractor for services rendered on a contract made when there is payment or part payment of any claim under any contract not authorized by law." The court also quoted section 100 of the Constitution. It will be seen that in Miller v. Tucker the court construed section 96 by express and appropriate language, and that it is absolutely contrary to the principle announced in the Green case. Again, the Green case did not refer to sections 1 and 2 of the Constitution, but held that the county superintendent of education was possessed of both executive and judicial powers, clearly contrary to these sections, too plain to be misconstrued, and is in direct conflict not only with that section, but with the Haley v. State case, supra. It did not mention the Haley case, and it did not mention section 2 of the Constitution, and we certainly ought to assume that the court did not have either of them in mind. However, if it did, the later case of Miller v. Tucker, supra, would have the same effect, and it would be, in turn, overruled.

It seems to me that the decision of the majority opinion is not only wrong, but that it will result in mischief; and I do not see how a distinction can be drawn between the case at bar, and others that will arise hereafter, where the board in the case at bar, and boards of supervisors hereafter, undertake to grant extra compensation on contracts already made. The effect will be that the wholesome safeguards of section 96 of the Constitution will be officially removed, where boards let contracts and pay out money in such cases to insolvent persons, or where persons become insolvent after the money is paid. It is often the case that boards of supervisors and municipalities are confronted with the fact that contracts are bid for at prices that will inevitably result in loss to the contractors. If the law permits such boards to do so, it would, in effect, relieve as to persons, but the trouble about this is that persons would appear and bid in competition with others, and take the work at a cheaper price, and after getting the contract, would approach the boards and secure extra compensation; such boards being liberal with its friends and having lawful authority to do so. As to what was done in the case at bar, by allowing not only enough to cover the losses that the contractor would suffer by performing his contract, the board granted enough compensation to amount to a handsome profit upon the cost of the work. The whole policy of the law, as announced in sections 96 and 100 of the Constitution, is to protect the public from this very evil.

I therefore think the judgment of the court below should be affirmed.